UNITED STATES of America, Appellee,

v.

George Ricco RAY, Appellant.

No. 81–5308.

United States Court of Appeals, Fourth Circuit.

Argued July 23, 1982.

Decided Sept. 15, 1982.

Certiorari Denied Jan. 24, 1983.
See 103 S.Ct. 829.

DONALD RUSSELL, Circuit Judge:

The appellant challenges his conviction under an indictment in four counts charging the appellant's co-defendant Norma Jean Tinnin as principal and the appellant as the aider and abettor in the commission of two crimes of bank embezzlement and two of false entries on bank records, all in violation of the National Banking Act.[1] We affirm.

The appellant was at all times involved herein unemployed, living under the same roof with three women, all spoken of as his wife,[2] and all of whom provided him with their earnings, when working. One of these so-called wives was the co-defendant Norma Jean Tinnin, who, during the week, was employed as a teller and vault custodian at the South Boulevard Branch of the Wachovia Bank and Trust Company in Charlotte, North Carolina. As evidence of her subservience to the appellant, it is undisputed that Tinnin gave her paycheck from the bank each week to the appellant. Tinnin explained that the reason for this arrangement was "[b]ecause I was living in his (the appellant's) household and that's what I was told to do."

In late September, 1980, the appellant told his co-defendant Tinnin that he had to have "a certain amount at a certain time so he wouldn't lose his house." In order to avoid this loss, he told the co-defendant Tinnin to take $6,000 from the bank and give it to him. Arrangements were made between the appellant and his co-defendant for this abstraction of the bank's funds. Under the arrangement, Tinnin took "$6,000 from the vault and brought it out to [her] drawer." The appellant called a little later on the same day to inquire "if it was okay to pick [the money] up." When told that it was, the appellant, accompanied by Janice Thompson, another of his three so-called wives, drove to the bank in his car and, while he remained in the car, he sent Janice Thompson into the bank to receive

Dale S. Morrison, Charlotte, N. C., for appellant.

Harold J. Bender, Asst. U. S. Atty., Charlotte, N. C. (Charles R. Brewer, U. S. Atty., Asheville, N.C., on brief), for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

1. 18 U.S.C. §§ 656 and 2, and 18 U.S.C. §§ 1005 and 2.

2. One of the three may actually have been married to the appellant; the other two were not. However, all three were spoken of as wives, though, in the case of Tinnin at least, were treated more as servants or helots.

the $6,000 from Tinnin. Janice Thompson, after receiving the money, returned to the car and delivered the money to the appellant. The appellant picked up his co-defendant Tinnin, after she had finished work that day and he "thanked [Tinnin] for the money," brought to him by Janice Thompson.

As a result of her abstraction of the $6,000, Tinnin's accounts at the bank were "out of balance." She covered up her shortage by making "false entries [on the bank's records]" each day the shortage continued. As the concealment continued, Tinnin became apprehensive that the bank might at any time have an audit and her embezzlement would be discovered. She discussed all this with the appellant. As a result of this discussion, the appellant gave Tinnin two checks, signed by him and drawn on a bank in Philadelphia, with the amount thereof left blank, which Tinnin could fill in "in case of an audit" in order to cover any shortages in her account caused by the theft of the $6,000.

Subsequently, Tinnin began to give the appellant, in addition to her paycheck, $500 a week which she also stole from the bank. She testified that she did this "so we [whether this was an editorial "we" or actually was intended to cover the other two wives is not clear] wouldn't have to go out and take money." Later, she told the appellant she had used one of the blank checks given her by the appellant to cover up these abstractions. At that time, Tinnin was particularly fearful of a loss of her job. To allay her concern, the appellant promised Tinnin he would try to cover that check.

■ Under this record the appellant does not really contest the validity of his conviction under count one of the indictment (*i.e.*, aiding and abetting the embezzlement of the $6,000). The testimony is undisputed that he had "told" Tinnin to steal the money. He was thus the instiga-

tor of the criminal act itself. Tinnin, it is true, did not deliver the money to the appellant personally but to his messenger Janice Thompson. This is unimportant, however, since it is undisputed that Thompson was the appellant's agent in this transaction and that the appellant received the money from Thompson. *See United States v. Hathaway*, 534 F.2d 386, 390 (1st Cir.) *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976). One need not be present physically at the time to be guilty as an aider and abettor in an embezzlement; it is sufficient under the statute that he "induce[d]" or "procure[d]" another to embezzle. *United States v. Sacks*, 620 F.2d 239, 241 (10th Cir. 1980). The statute thus prescribes that one who "aids, abets, counsels, commands, induces or procures" commission of a crime is guilty of the offense of aiding and abetting. 18 U.S.C. § 2(a). On this record, the appellant could not contest the sufficiency of the evidence on the first count charging aiding and abetting on his part in the theft of the $6,000.

■ Equally without merit is appellant's challenge to his conviction under the second count which charged him with aiding and abetting in the use of false entries on the bank records to conceal this $6,000 embezzlement. His defense is that he had no part physically in making the false entries on the bank's records.[3] He, however, accepted the money, knowing full well how it had been procured. He knew that Tinnin had to conceal the theft by some entry on her books. Proof of his participation did not require that he know precisely how Tinnin concealed the theft; it is enough that he reasonably knew that she had concealed the theft by some form of entry. That the appellant knew all this is made crystal clear by his preparing and giving Tinnin blank checks to be used in her "cover-up" if she (Tinnin) were confronted with an audit.

---

**3.** As we have already noted, to be convicted as an aider and abettor, it is not necessary that one be present at the commission of the crime, *Aaronson v. United States*, 175 F.2d 41, 44 (4th Cir. 1949); *Carolene Products Co. v. United States*, 140 F.2d 61, 66 (4th Cir.), *aff'd.*, 323

U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15 (1944), but "must have some interest in the criminal venture," *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977). The appellant unquestionably had such interest in this case.

Under these facts and the reasonable inferences therefrom, the appellant's involvement in the false entry charge was sufficient to sustain his conviction under count two of the indictment.[4]

■ The appellant's primary argument is directed at his conviction under counts three and four of the indictment. He argues that, unlike the evidence relative to the $6,000 embezzlement, there is no evidence that he instructed or told Tinnin to steal $500 a week from the bank before she stole the money. It is a fair inference from Tinnin's testimony, however, that the appellant told her in no uncertain terms that, unless she came up with $500 a week, she would be required by the appellant "to go out and take money" over the week-end. The appellant thus created a situation which he reasonably knew would force the defendant Tinnin to steal an additional $500 each week from the bank for his benefit. *See Clinton Cotton Mills v. United States*, 164 F.2d 173, 176 (4th Cir. 1947). In effect, he gave Tinnin no alternative and he knew this. The choice he gave Tinnin was either "hustling" or stealing. The situation was little different from that present in so many mail fraud cases, where the defendant denies any knowledge of the use of the mails by his co-defendant. However, the Courts have uniformly held that "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used ...." *United States v. Grow*, 394 F.2d 182, 206 (4th Cir.), *cert. denied*, 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111 (1968) [quoting *Pereira v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954)]; *United States v. Perkal*, 530 F.2d 604, 606 (4th Cir.), *cert. denied*, 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 82 (1976). And, in *United States v. Hathaway, supra*, at p. 398, it was said that "a violation [as an aider and abettor under the Travel Act] could accrue if a defendant so actively encouraged patrons to travel interstate that his conduct approximated that of a principal in a criminal agency relationship." The appellant in this case, by his subtle method of coercion of Tinnin, assuredly "encourage[d]" the perpetrator Tinnin, in the commission of the offense charged and it could "reasonably be foreseen" by the appellant—in fact this was his obvious purpose—that Tinnin would be induced to steal. *United States v. Buttorff*, 572 F.2d 619, 623 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978). *See also United States v. Wiebold*, 507 F.2d 932, 934 (8th Cir. 1974). When, without "go[ing] out and tak[ing] money," Tinnin brought the appellant $500 each week to escape "go[ing] out and tak[ing] money" from hustling over the weekend, and the appellant accepted such money "reasonably" knowing that it was the result of his inducement and coercion, the appellant had cause to know that there was only one way in which Tinnin could have procured that money and that was by stealing it from the bank. With that knowledge, he took the money; not once but for several weeks thereafter, thereby associating himself with the crime. Even if it should be assumed that he had no knowledge of the first embezzlement of $500, he could have been under no misapprehension how Tinnin was thereafter procuring the money for him. He plainly made himself a party to the subsequent abstractions by Tinnin, even if it could be said that at the outset of these weekly embezzlements he did not expressly ask Tinnin to steal but only made it inevitable that she would. *See Logsdon v. United States*, 253 F.2d 12, 15 (6th Cir. 1958). This was ample to sustain the conviction under count three.

Moreover, the appellant knew that, to conceal these thefts of $500 each week, Tinnin had to balance her accounts as teller and vault custodian by resorting to false entries on the bank's records, just as she

---

4. *Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943):

   "The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference."

had done in connection with the $6,000 embezzlement. We have no doubt that, after reviewing all this evidence and the reasonable inferences therefrom in the light most favorable to the prosecution, as is our duty, a rational trier of fact could have found the essential elements of the crime charged not only in count three but also in count four of the indictment beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 316–17, 99 S.Ct. 2781, 2787–88, 61 L.Ed.2d 560 (1979); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The appellant has raised two additional claims of error. One addresses the admission of certain evidence which the appellant claims was both irrelevant and prejudicial. The evidence was perfectly relevant and, even had it not been, its admission would have been harmless. The questioned evidence consisted of evidence by appellant's counsel in a real estate transaction. It dealt only with undisputed matters already proven in the record and could in no event have been harmful to appellant's defense. The other claim of error raised by the appellant concerns Government counsel's closing jury argument. The appendix as prepared and filed by the appellant includes no transcript of the closing arguments of counsel nor is it suggested that the appellant entered any objection to the argument of counsel. Apart from this, we are unable to perceive anything objectionable in what the appellant claims Government counsel said in his closing argument. No ground for reversal can be assigned in this connection.

Accordingly, the judgment of conviction of George Ricco Ray is

AFFIRMED.*