**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1015**

JEFFREY A. JOHNSON,

              Plaintiff - Appellant,

    v.

WHEELING-PITTSBURGH STEEL CORPORATION,

              Defendant - Appellee.

**No. 07-1127**

JEFFREY A. JOHNSON,

              Plaintiff - Appellant,

    v.

WHEELING-PITTSBURGH STEEL CORPORATION,

              Defendant - Appellee.

Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., Senior District Judge. (5:05-cv-00055-FPS)

Argued: January 30, 2008          Decided: May 14, 2008

Before WILKINSON and GREGORY, Circuit Judges, and Patrick Michael DUFFY, United States District Judge for the District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Ronald William Kasserman, KASSERMAN & BOWMAN, P.L.L.C., Wheeling, West Virginia, for Appellant.  Thomas H. May, DICKIE, MCCAMEY & CHILCOTE, P.C., Pittsburgh, Pennsylvania, for Appellee. **ON BRIEF:** Jeffrey J. Wetzel, DICKIE, MCCAMEY & CHILCOTE, P.C., Pittsburgh, Pennsylvania; Melissa Barr, DICKIE, MCCAMEY & CHILCOTE, P.C., Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

Appellant Jeffrey A. Johnson ("Johnson") appeals the order of the district court granting summary judgment in favor of Appellee Wheeling-Pittsburgh Steel Corporation ("WPSC") on all but one of his claims of racial and religious discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17 (2000). The case proceeded to trial on the sole claim that survived summary judgment, resulting in a jury verdict and judgment in favor of WPSC. In addition to appealing the district court's order granting partial summary judgment in favor of WPSC (Appeal No. 07-1015), Johnson appeals the district court's exclusion of certain evidence at trial (Appeal No. 07-1127). For the reasons that follow, we affirm.

I.

Johnson, a black male, began working at WPSC on November 26, 1972, and at the time of the events in question, he was employed by WPSC as a mechanical millwright. On February 8, 2000, Johnson filed his first EEOC charge against WPSC, alleging racial discrimination. Specifically, Johnson alleged that: (1) he was not paid for a grievance as his white coworkers were; (2) he was harassed by being ordered to have an injury re-evaluated; (3) no one contacted him regarding his complaints; (4) the area manager, Donald Dunfee ("Dunfee"), made a comment to a secretary and Johnson

3

that he wanted to get a nose transplant to make his nose bigger; (5) a less senior white employee was awarded a job for which he had applied; (6) he was asked to work overtime but refused because he was told it was an eight-hour shift when really it was a 16-hour shift that would have resulted in overtime; (7) he was called at home to come back to work overtime when no other employees were called; and (8) a paycheck was short three weeks' pay. Johnson ultimately filed a civil action against WPSC based on his EEOC charge; however, in September of 2000, Johnson dropped both the EEOC charge and the civil action. Johnson asserted that he dropped the EEOC charge and the civil action because he became a Deacon in a Christian church.

In October of 2001, Area Manager Dunfee posted a bid for a bearing repairman job at WPSC. Having the most seniority, Johnson was the successful bidder. However, Johnson asserted that Dunfee realized who got the job and canceled the job, later giving it to a man named Tommy Dear without re-posting the position.[1]

Johnson next asserted that after WPSC's reorganization in bankruptcy in August of 2003, Dunfee decided to organize a bull gang of millwrights to work steady daylight. According to Johnson,

---

[1]The district court granted summary judgment in favor of WPSC on Johnson's claim regarding the bearing repairman job, finding that the claim was barred by the statute of limitations. In fact, Johnson conceded in his response to WPSC's motion for summary judgment that this claim was barred by the statute of limitations, and he has not appealed the district court's ruling on this claim.

he was the fifth or sixth person in seniority to apply for one of the eight positions made available on the bull gang. When Johnson applied for the job, Dunfee told him that the only positions that were left had days off on Tuesdays and Wednesdays. Johnson told Dunfee that he was a Deacon in his church and needed to have Sundays off, to which Dunfee allegedly responded, "take it or leave it." Johnson did not accept the position. Instead, the two positions with Tuesdays and Wednesdays off were filled by Ed Lapanja ("Lapanja") and Steve Besece ("Besece").

Although the positions were supposed to have only Tuesdays and Wednesdays off, Johnson asserted that Dunfee permitted Lapanja and Besece to alter their days off at times. According to the record, Lapanja had 15 Sundays off in 2004, 14 Sundays off in 2005, and nine Sundays off in the first 22 weeks of 2006. Besece testified that he worked 13 out of 16 Sundays before he moved out of the daylight bull gang millwright job. Johnson testified that in addition to not accommodating him based on his religion, Dunfee was retaliating against him for his February 8, 2000 EEOC charge. Johnson asserted, "the reason I say race plays a big part in it is because of the racial slurs I know he'd make and from growing up with Mr. Dunfee, where he came from."

In the end of 2003 or the early part of 2004, Johnson suffered a right-hand injury that required him to be off of work for a compensable period of time. Johnson was released to light duty

5

work on February 4, 2004. The light duty work was under a 12-week alternate work policy with WPSC that ended the week of April 28, 2004. Johnson presented a "return to work slip" dated April 28, 2004, which indicated that he could return to work with "limited duty with right hand." The next work day, May 3, 2004, Johnson's immediate supervisor, Jonathan Lewis ("Lewis"), scheduled Johnson to change the edger rolls on the E-3 edgers, a job described as "very physical." According to Johnson, he told Lewis that he could not do the job with just one good hand. Johnson's co-worker, Robert Poole ("Poole"), a white worker with less seniority than Johnson who had been assigned to the light duty task of checking the oil in the VFD rolls, testified in his deposition that he offered to switch job assignments with Johnson. In response, Lewis stated that Poole and Johnson could not switch jobs because Dunfee had told him to put Johnson on the edger job. Johnson performed the assigned job and re-injured his hand, resulting in his inability to work for eight months. Johnson alleged that WPSC's refusal to allow him to switch jobs was based on retaliation.

In April of 2004, Dunfee posted two "temporary positions" in the slab yard that were mostly daylight but with "flexible days off and turns." Johnson alleged that Dunfee posted these jobs as having "flexible days off and turns" to intentionally discourage him from bidding because he knew Johnson needed all Sundays off due to his religious duties. Johnson did not bid for the job, and two

6

less senior men ultimately received the jobs. According to Johnson, one of the men received regular Fridays and Saturdays off and the other received regular Saturdays and Sundays off. Johnson asserted that although these positions were filled as "temporary" and "flexible," they remained with one position having regular Fridays and Saturdays off and the other position having regular Saturdays and Sundays off for over two years.

On July 14, 2006, WPSC filed a motion for summary judgment, and on November 26, 2006, the district court entered an order granting summary judgment in favor of WPSC on all of Johnson's claims except one. Specifically, the district court granted summary judgment in favor of WPSC on all of Johnson's retaliation claims and on his racial discrimination claims regarding the bull gang job and the slab yard job. The district court also granted summary judgment in favor of WPSC on Johnson's religious discrimination claim regarding the slab yard job but denied summary judgment on Johnson's religious discrimination claim regarding the bull gang job. The case proceeded to trial on the sole remaining claim, and the jury returned a verdict in favor of WPSC. Johnson filed the present appeal asserting that: (1) the district court erred in granting summary judgment in favor of WPSC on his retaliation claims;(2) the district court erred in granting summary judgment in favor of WPSC on his racial and religious

7

discrimination claims; and (3) the district court erred in excluding certain evidence at trial.

II.

This court reviews an award of summary judgment *de novo*. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004) (en banc). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

We review the decision of a district court to admit or exclude evidence for abuse of discretion. See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law. See United States v. Hedgepeth, 418 F.3d 411, 419 (4th Cir. 2005); United States v. Williams, 461 F.3d 445 (4th Cir. 2006).

III.

To prevail on a Title VII retaliation claim, a plaintiff is required to show: (1) that he engaged in protected activity; (2) that he was subject to an adverse employment action; and (3) that a causal connection existed between the first two elements. See Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Assuming that a prima facie case is established, the burden then shifts to the employer "to rebut the presumption of retaliation by articulating a legitimate, nonretaliatory reason for its actions." Id. (internal quotation marks omitted). The burden then shifts back to the plaintiff "to show that the reason is mere pretext for retaliation by proving both that the reason was false and that discrimination was the real reason for the challenged conduct." Id. (internal quotation marks omitted).

Here, the district court found that Johnson failed to establish the first element of a prima facie case of retaliation-that he engaged in protected activity-and therefore, the district court granted summary judgment in favor of WPSC on Johnson's retaliation claims. In its order, the district court focused solely on whether Johnson engaged in protected activity when he complained about Dunfee's alleged racial slur, ultimately finding that a complaint about one isolated racial comment was not a complaint about an unlawful employment practice under Title VII. In focusing solely on the alleged racial slur, however, the

9

district court failed to consider the other claims raised by Johnson in his 2000 EEOC charge: (1) that he was not paid for a grievance as his white coworkers were; (2) that he was harassed by being ordered to have an injury reevaluated; (3) that no one ever contacted him regarding his complaints; (4) that a less senior white employee was awarded a job for which he applied; (5) that he was asked to work overtime but refused because he was told it was an eight-hour shift, when really it was a 16-hour shift that would have resulted in overtime; (6) that he was called at home to come back to work overtime when no other employees were called; and (7) that a paycheck was short three weeks' pay.

We conclude that the district court erred in finding that Johnson failed to establish the first element of a prima facie case, as the record clearly indicates that Johnson engaged in protected activity when he filed his first EEOC charge in 2000. Nevertheless, despite this error, we affirm the district court's grant of summary judgment in favor of WPSC on Johnson's retaliation claims because we conclude that Johnson failed to establish the third element of a prima facie case, namely, that a causal connection existed between the protected activity and the alleged adverse employment actions.

On appeal, Johnson admits that he cannot establish a causal connection by pointing to temporal proximity because the EEOC charge was filed in February of 2000 and the alleged adverse

10

employment actions occurred more than three and one-half years later.  See Clark v. County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close[.]") (internal quotation marks and citation omitted).  Instead, Johnson asserts that the continuing retaliatory conduct and animus directed at him establishes the requisite causal connection between the protected activity and the alleged adverse employment actions.  In so asserting, Johnson relies upon Lettieri v. Equant, Inc., a case where the plaintiff did not rely on temporal proximity to establish a causal link but instead pointed to continuing retaliatory conduct and animus directed at her by her employer in the seven-month period between her complaint and her termination.  478 F.3d 640, 650 (4th Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000) ("In cases where 'temporal proximity between the protected activity and allegedly retaliatory conduct is missing, courts look to the intervening period for other evidence of retaliatory animus.'")).

After consideration, we conclude that Johnson's reliance on Lettieri is misplaced.  In Lettieri, the plaintiff initially complained of gender discrimination in December of 2001 and ultimately was terminated in July of 2002, following a seven-month

11

period of regularly occurring events that were reasonably viewed as exhibiting retaliatory animus. For example, following her complaint, the plaintiff was stripped of significant job responsibilities, including her authority to set prices and meet directly with clients. These steps, in turn, made it easier for her supervisor to assert that she was not needed and should be terminated. Indeed, before long, discussions about terminating the plaintiff occurred. Then, after the decision was made to fire her in June of 2002 (based on the supposed redundancy of her position), her supervisor sought immediate approval to hire a replacement for her. See id. at 650-51. Based on these circumstances and events, which occurred regularly after the plaintiff's complaint and could reasonably be viewed as exhibiting retaliatory animus on the part of her employer, we concluded that the plaintiff had shown a causal link between her complaint and her termination. See id.

In contrast, we conclude that the circumstances and events in the present case are a far cry from those necessary to show a causal link between the protected activity and the alleged adverse employment actions. Here, Johnson asserted that retaliatory conduct began in 1999 when Dunfee started working as the area manager. Presumably, Johnson refers to the events complained of in his 2000 EEOC charge; however, he does not state this. Rather, Johnson refers only to events occurring in 2003 and 2004, *more than three and one-half years* after he filed his first EEOC charge. In

12

fact, the record does not contain evidence of any other intervening events to support a causal connection. Although Johnson asserts that he knew Dunfee from high school and "knew where he came from," we conclude that this in no way establishes a causal link between the protected activity and the alleged adverse employment actions. In sum, because the circumstances and events in the present case are wholly distinguishable from those present in <u>Lettieri</u>, we conclude that Johnson failed to establish the third element of a prima facie case of retaliation–that a causal connection existed between the protected activity and the alleged adverse employment actions. Therefore, we affirm the district court's grant of summary judgment in favor of WPSC on Johnson's retaliation claims, albeit on different grounds.

IV.

We now turn to Johnson's racial and religious discrimination claims regarding the bull gang job and the slab yard job.[2] First, we consider whether the district court erred in granting summary judgment in favor of WPSC on Johnson's racial discrimination claims regarding the bull gang job and the slab yard job. Then, we consider whether the district court erred in granting summary

---

[2]As previously outlined, Johnson asserted racial *and* religious discrimination claims with respect to the bull gang job and the slab yard job. The district court granted summary judgment on all of these claims except for Johnson's religious discrimination claim regarding the bull gang job.

13

judgment in favor of WPSC on Johnson's religious discrimination claim regarding the slab yard job.

A.

A plaintiff generally may defeat summary judgment and establish a claim for racial discrimination by one of two avenues of proof. First, a plaintiff may establish a claim of racial discrimination by demonstrating through direct or circumstantial evidence that his race was a motivating factor in the employer's adverse employment action. See, e.g., Hill v. Lockheed Martin Logistics, Mgmt., Inc., 354 F.3d 277, 287 (4th Cir. 2004) (en banc). "The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination. Id. at 285.

Here, the district court analyzed Johnson's racial discrimination claims regarding the bull gang job and the slab yard job as failure to promote claims. To establish a prima facie case of discriminatory failure to promote, a plaintiff must show that (1) he is a member of a protected class; (2) his employer had an open position for which he applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of

14

unlawful discrimination.  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959-60 (4th Cir. 1996).

First, with respect to the bull gang job, the district court noted that the plaintiff was the fifth or sixth man in seniority to apply for one of the eight positions on the bull gang, but that when he applied, Dunfee told him that the only positions left were those with Tuesdays and Wednesdays off.  Johnson declined to take one of these positions, and they were ultimately given to Lapanja and Besece, two white, less senior men.  The district court then considered Johnson's argument that Lapanja's ability to switch his days off to Saturdays and Sundays with Dunfee's permission provided evidence that Dunfee manipulated the schedule so that he could discriminate against him based on his race.  Ultimately, the district court concluded that Johnson provided only speculation to support his assertion that he was discriminated against based on his race.  See Autry v. North Carolina Dep't of Human Res., 820 F.2d 1384, 1386 (4th Cir. 1987) ("Mere speculation by the plaintiff that the defendant had a discriminatory motive is not enough to withstand a motion for summary judgment.").

We agree with the district court.  Indeed, a review of the record indicates that the only evidence Johnson can offer to claim that his failure to get a Saturdays/Sundays-off position on the bull gang was based on his race is his statement that, "the reason I say race played a big part in it is because of the racial slurs

15

I know he would make, and from growing up with Mr. Dunfee where he came from." This statement amounts to nothing more than speculation on Johnson's part and is not enough to withstand a motion for summary judgment. Moreover, to the extent that Johnson relies upon Lapanja and Besece's ability to alter their days off with the permission of Dunfee, the fact remains that Lapanja and Besece worked more Saturdays and Sundays than they did not. Thus, the fact that Lapanja and Besece were granted permission to alter their schedules on occasion does not provide evidence to support Johnson's assertion that Dunfee manipulated the schedule so that he could discriminate against him *based on his race*.

Next, with respect to the slab yard job, the district court concluded that Johnson could not establish a prima facie case of discriminatory failure to promote because he did not bid on or attempt to bid on the job. On appeal, Johnson argues that he did not need to bid on or apply for the job because to do so would have been futile.

Here, despite Johnson's failure to apply for the slab yard job, the fact remains that there is no evidence in the record to support Johnson's assertion that Dunfee posted the slab yard job as "temporary" and "flexible" to intentionally deter him from applying *based on his race*. Thus, this claim fails for the same reason that his racial discrimination claim concerning the bull gang job fails, namely, because the only evidence offered to support this claim is

mere speculation on the part of Johnson that Dunfee posted these positions as "temporary" and "flexible" to intentionally discriminate against him based on his race. Again, this mere speculation on the part of Johnson is not enough to withstand summary judgment. Therefore, we affirm the district court's grant of summary judgment in favor of WPSC on Johnson's religious discrimination claim concerning the slab yard job.

## B.

We now consider whether the district court erred in granting summary judgment in favor of WPSC on Johnson's religious discrimination claim regarding the slab yard job.

As the district court noted, Title VII makes it "an unlawful practice for an employer . . . to discharge any individual . . . because of such individual's religion." 42 U.S.C. § 2000e-2. Employees asserting religious discrimination claims can proceed on one of two theories, the disparate treatment theory or the failure to accommodate theory. See Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996) (citation omitted).

In religious accommodation cases, we employ a burden shifting scheme akin to the one articulated in McDonnell Douglas Corp. V. Green, 411 U.S. 792 (1973). A plaintiff must first establish a prima facie case by showing that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she

17

was disciplined for failure to comply with the conflicting employment requirement." Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996) (citation omitted). If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship. Id. This is a two-prong inquiry. To satisfy its burden, the employer must demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have caused undue hardship. See E.E.O.C. v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008) (internal quotation marks and citations omitted).

Here, the district court determined that Johnson failed to establish a prima facie religious discrimination claim with regard to the slab yard job because Johnson provided no evidence, outside of his own statements, that he was interested in the position or that he would have applied for it but for the allegedly discriminatory practices of Dunfee. As the district court noted, "[w]hile Title VII does not require a plaintiff to apply for a job when to do so would be a futile gesture, a plaintiff claiming he was deterred from applying for a job by his employer's discriminatory practices has the burden of proving that he would have applied for the job had it not been for those practices."

18

<u>Brown v. McLean</u>, 159 F.3d 898, 903 (4th Cir. 1989) (citing <u>Int'l Bhd. of Teamstesr v. United States</u>, 431 U.S. 324 (1977)). "This is not always an easy burden." <u>Teamsters</u>, 431 U.S. at 368.

On appeal, Johnson claims that common sense supports his assertion that he was interested in the slab yard position and would have applied for it but for Dunfee's allegedly discriminatory practice of listing the job as "temporary" and "flexible." Johnson states:

> After thirty-one (31) years in the mill working all three (3) shifts, common sense dictates that a 50 year old worker would desire a steady daylight weekday job with Saturdays and Sundays. This negates the Court's finding that there was no evidence outside his own statements that Jeffrey Johnson was interested in the position.

(Johnson's Brief at 26.)

Unfortunately for Johnson, we are not persuaded. While common sense may indeed support his assertion that he was interested in the slab yard job, at least from his perspective, we are not prepared to find that Johnson met his burden of proving that he would have applied for the position but for how Dunfee advertised it by relying solely on his own after-the-fact statements and common sense. As the district court noted, there is no evidence that Johnson ever inquired about or requested an accommodation with respect to the slab yard job. Moreover, there is no evidence—aside from Johnson's own statements and common sense, which we find insufficient to meet his burden—that he would have applied for the position at the time it was filled. Based on this, we agree with

19

the district court that Johnson failed to establish a prima facie case of religious discrimination with respect to the slab yard job, and we therefore affirm the district court's grant of summary judgment in favor of WPSC on this claim.

## V.

Finally, Johnson asserts that the district court abused its discretion in excluding from trial evidence of discrimination relating to the slab yard job and other jobs. Having had the benefit of oral argument and briefing from the parties, and after carefully reviewing the record, we conclude that the district court did not abuse its discretion in excluding evidence of discrimination relating to the slab yard job and other jobs at trial. Therefore, we affirm the district court's evidentiary ruling.

## VI.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED